United States District Court
Southern District of Texas
ENTERED
April 08, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL CAPLAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2083 |
| | § | |
| FLUOR ENTERPRISES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Daniel Caplan ("Caplan"), brings this action against defendant, Fluor Enterprises, Inc. ("FEI"), for disability discrimination, failure to accommodate, and retaliatory discharge in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111, et seq. ("ADA"); and for interference and/or retaliatory termination in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Pending before the court are Plaintiff's Motion for Partial Summary Judgment ("Caplan's MPSJ") (Docket Entry No. 28), Defendant Fluor Enterprises, Inc.'s Motion for Summary Judgment ("FEI's MSJ") (Docket Entry No. 31), and Defendant Fluor Enterprises, Inc.'s Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike ("FEI's Objections and Motion to Strike") (Docket Entry No. 38). For the reasons set forth below, Caplan's MPSJ will be denied, FEI's MSJ will be denied, and Fluor's Objections and Motion to Strike will be granted in part and denied in part.

## I. **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56. Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-2554). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial. Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and

it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Id.

## II. Undisputed Facts[1]

FEI hired Caplan as a Specialist III, Material Management, on October 31, 2011, to work in the Quality Department where he reported to Bob Yur (Office Manager) and Kenneth J. Taylor (Quality Manager).[2] In 2015 Caplan's job title was reclassified as Associate Quality Specialist III within the reorganized Quality

[1]See Factual Background, Plaintiff's Original Complaint, Docket Entry No. 1, pp. 2-6 ¶¶ 7-62; Statement of Facts, FEI's MSJ, Docket Entry No. 31, pp. 10-17; Relevant Facts, Plaintiff's Response to Defendant's Motion for Summary Judgment, ("Plaintiff's Response"), Docket Entry No. 34, pp. 3-5; and Statement of Facts in Defendant Fluor Enterprises, Inc.'s Opposition to Plaintiff's Motion for Partial Summary Judgment ("FEI's Opposition to Caplan's MPSJ"), Docket Entry No. 35, at pp. 9-14. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Oral Deposition of Daniel Caplan ("Caplan Deposition"), pp. 53:4-54:16, 106:10-107:1, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 15 and 28.

Department, a title he held until he was laid off on August 1, 2016.[3] FEI's Quality Department provides supplier quality surveillance ("SQS") services to clients who are billed for the services.[4] In 2015 Caplan worked as SQS Coordinator on a project in Sakhalin Island, Russia.[5] In mid-2015, FEI's client on the Sakhalin Island project asked FEI to remove Caplan from the project due to his frequent absences. On July 19, 2015, Taylor and representatives of FEI's Human Resources ("HR") department met with Caplan to discuss his absences, problems his absences were causing the project, and options available to him for taking leave – including short-term disability and FMLA leave.[6] Taylor ultimately replaced Caplan on the Sakhalin Island project with Henry Howski, and reassigned Caplan to the SASOL Project, a project in Louisiana.[7]

---

[3]Id. at 218:7-12, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, p. 56. See also Oral Deposition of Kenneth J. Taylor ("Taylor Deposition"), p. 61:10-20, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, p. 18; and Declaration of Kenneth Taylor ("Taylor Declaration"), Exhibit G to FEI's Opposition to Caplan's MPSJ, Docket Entry No. 35-7, p. 3 ¶ 4.

[4]Id. at 59:4-13, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, p. 16. See also Oral Deposition of Kenneth J. Taylor ("Taylor Deposition"), p. 14:12-22, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, p. 7.

[5]Taylor Deposition, pp. 32:3-18, 44:19-21, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, pp. 11 and 14.

[6]Id. at 127:15-129:7, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, p. 35. See also Caplan 2015 absence emails, Exhibit G to FEI's MSJ, Docket Entry No. 31-7.

[7]Id. at 18:13-19:8, 126:2-12, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, pp. 8 and 35.

Later, in March of 2016 when Caplan began missing work about once a week, he asked Yur and Taylor to allow him to work from home on days that he was not able to travel to the office because of an unspecified health problem. Yur and Taylor both denied Caplan's request to work from home. Caplan did not notify HR personnel about his request to work from home and did not ask for a reasonable accommodation or FMLA leave.[8]

In March of 2016 Caplan met with Taylor and Senior HR Specialist Melanie Lindstrom ("Lindstrom") to discuss his ongoing attendance problems. At the meeting Caplan repeated his request to work from home.[9] Caplan was experiencing symptoms that were unpredictable and could incapacitate him for several hours, but he was not aware of the medical condition causing his symptoms.[10] Lindstrom gave Caplan information about leave options, and Caplan eventually elected to take short-term disability leave that began on March 24, 2016.[11] By letter dated April 13, 2016, FEI informed Caplan that his approved short-term disability leave had also been designated as FMLA leave pursuant to FEI's leave policies.[12] In

---

[8]Id. at 62:1-65:21, 161:2-164:19, 232:1-9, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 17-18, 42, and 59.

[9]Id. at 297:22-298:20, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, p. 76.

[10]Id. at 70:16-19, 199:6-22, 222:10-224:5, 269:23-272:2, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 19, 51, 57, 69.

[11]Id. at 169:1-170:9 and 232:1-233:12 Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 44 and 59.

[12]Id. at 209:7-211:11, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, p. 54; Exhibit R to FEI's MSJ, Docket Entry No. 31-18.

June of 2016 Taylor assigned Henry Howski – who had completed the Sakhalin Island project – to the SASOL project to fill the gap left while Caplan was on short-term disability leave.[13]

While on leave Caplan was diagnosed with colitis,[14] but he never informed FEI and never requested an accommodation other than the leave that was granted and the ability to work from home that was not granted.[15] In July of 2016 Caplan informed Taylor and Lindstrom that his doctor authorized him to return to work on August 1, 2016.[16] Taylor instructed Caplan to report to Yur on August 1, 2016.[17] In the afternoon of August 1, 2016, Taylor and Lindstrom met with Caplan to tell him that he was being laid off in a reduction-in-force.[18] Although eligible for rehire by FEI, Caplan never applied for rehire because FEI had no jobs available.[19]

---

[13]Id. at 141:9-21, 236:17-237:5, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 37 and 60-61. See also Taylor Deposition, pp. 46:10-49:9, 51:3-8, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, pp. 15-16.

[14]Caplan Deposition, pp. 70:16-71:13, 222:10-223:15, 273:6-14, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 19, 57 and 70.

[15]Id. at 64:14-65:21, 143:21-144:8, 161:2-163:8, 273:6-275:16, and 298:10-20, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 17-18, 37, 42, 70, and 76.

[16]Id. at 98:13-100:20, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, p. 26. See also Email from Daniel Caplan, Exhibit T to FEI's MSJ, Docket Entry No. 31-20.

[17]Id. at 215:16-217:5, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 55-56. See also Email from Kenneth Taylor, Exhibit U to FEI's MSJ, Docket Entry No. 31-21.

[18]Id. at 82:9-12, 187:6-19, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 22 and 48.

[19]Id. at 32:17-23, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, p. 9.

## III. **FEI's Motion for Summary Judgment**

Caplan alleges that FEI discriminated against him on the basis of disability in violation of the ADA and the FMLA by discharging him from his position as an Associate Quality Specialist III on August 1, 2016, and by discharging him in retaliation for having taken FMLA and short-term disability leave.[20] FEI argues that it is entitled to summary judgment on Caplan's claims because

> the record evidence, consisting largely of Caplan's deposition admissions, establishes that: (1) Caplan cannot establish a *prima facie* case for discrimination under the ADA; (2) Caplan was laid off for legitimate, nondiscriminatory and nonretaliatory reasons; (3) Caplan has no evidence to establish that FEI's reason for laying him off was pretextual; . . . (5) Caplan cannot establish a retaliation case under either the ADA or the FMLA. . . .[21]

Asserting that he has a disability, that he was qualified for his job, that he was discharged because of his disability, that FEI's stated reason for his discharge is not true but, instead, a pretext for disability discrimination and retaliation for having taken FMLA and disability-related leave Caplan urges the court to deny FEI's MSJ.[22]

---

[20]See Plaintiff's Original Complaint, Docket Entry No. 1, p. 7. See also Plaintiff's Response, Docket Entry No. 34, p. 1 ("Caplan is no longer proceeding on his ADA failure to accommodate and FMLA interference claims, and they may be dismissed.").

[21]FEI's MSJ, Docket Entry No. 31, p. 9.

[22]Plaintiff's Response, Docket Entry No. 34, pp. 7-11.

## A. FEI is Not Entitled to Summary Judgment on Caplan's ADA Discrimination Claim

### 1. Applicable Law

Title I of the ADA makes it unlawful for an employer to discriminate against "a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Disability is defined as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1)(A)-(C). See also Milton v. Texas Department of Criminal Justice, 707 F.3d 570, 573 (5th Cir. 2013).

Caplan may establish an ADA discrimination claim by using direct evidence or the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). See Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999). Direct evidence "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir. 2004).

Caplan has not cited direct evidence of discrimination and does not argue that this is a direct evidence case.

Caplan's initial burden under the McDonnell Douglas framework is to establish a prima facie case of discrimination based upon his disability by showing (1) he has a disability, (2) he was qualified for the job, and (3) he was subjected to an adverse employment decision, i.e., he was discharged, on account of his disability. Caldwell v. KHOU-TV, 850 F.3d 237, 241 (5th Cir. 2017). If Caplan establishes a prima facie case of discrimination, a presumption of discrimination arises, and the burden shifts to FEI to articulate a legitimate, non-discriminatory reason for discharging him. Id. at 241-42. Once FEI articulates a legitimate, nondiscriminatory reason for the discharge, the burden shifts back to Caplan who may prove intentional discrimination by producing evidence from which the jury could conclude that FEI's articulated reason is a pretext for discrimination. Id. at 242. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Id. (quoting Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010)). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Id. (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)).

2. Application of the Law to the Undisputed Facts

(a) Caplan Establishes a Prima Facie Case

**(1) Caplan Has a Disability**

FEI has not challenged Caplan's assertion that he has colitis or that colitis may be considered a disability under the ADA.[23] Therefore, for the purposes of this motion and the prima facie case analysis, the court accepts that Caplan is a person with a disability. See E.E.O.C. v. Chevron Phillips Chemical Co., LP, 570 F.3d 606, 618 (5th Cir. 2009) ("[R]elapsing-remitting conditions like . . . colitis can constitute ADA disabilities depending on the nature of each individual case.").

**(2) Caplan Is a Qualified Individual**

FEI argues that Caplan cannot establish a prima facie case of ADA discrimination because he cannot establish that he was a qualified individual.[24] An employee is a "qualified individual" under the ADA if he, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). See E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 697 (5th Cir. 2014) (citing Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th

[23]FEI's MSJ, Docket Entry No. 31, p. 19.

[24]FEI's MSJ, Docket Entry No. 31, pp. 19-23. See also Defendant Fluor Enterprises, Inc.'s Reply in Support of its Motion for Summary Judgment ("FEI's Reply"), Docket Entry No. 37, pp. 5-10.

Cir. 1996) (per curiam) ("To avoid summary judgment on whether he is a qualified individual, [plaintiff] needs to show 1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job."). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." Id. (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993), modified on other grounds by Kapche v. City of San Antonio, 304 F.3d 493 (5th Cir. 2002) (per curiam)).

FEI argues that Caplan was not a qualified individual because

> [r]egular, predictable attendance on location was at all times an essential function of Caplan's job as an Associate Quality Specialist III and in the role he was performing prior to going on leave – an SQS Coordinator, because these positions required regular face-to-face interaction and team coordination.[25]

Citing Credeur v. Louisiana, Through the Office of the Attorney General, 860 F.3d 785, 793-95 (5th Cir. 2017), FEI argues that the ability to appear for work is generally recognized as an essential job function, that Caplan's deposition testimony clearly indicates that he could not perform this essential function of his job and, therefore, that Caplan was not a qualified individual under the

---

[25]FEI's MSJ, Docket Entry No. 31, p. 19 (citing Associate Quality Specialist III, Job Description, p. 2, Exhibit F to FEI's MSJ, Docket Entry No. 31-6, p. 3; and Declaration of Kenneth Taylor ("Taylor Declaration"), p. 2 ¶ 4, Exhibit AA to FEI's MSJ, Docket Entry No. 31-27, p. 3 ¶ 4.

ADA. In Credeur the Fifth Circuit observed that "there is a general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs." Id. at 793. Asserting that Caplan admitted during his deposition that neither the timing nor the severity of his colitis flare-ups can be predicted, and that when flare-ups occur he is unable to work either on location or at home, FEI argues that Caplan has failed to produce any evidence that he would have been able to perform the essential elements of his job – or any other job – with or without reasonable accommodations.[26]

Acknowledging that his FMLA leave began on March 24, 2016, and ended on June 17, 2016, and that he continued on short-term disability leave until August 1, 2016, the date his doctor released him to return to work, Caplan argues that he was a qualified individual with a disability because his doctor released him to return to work without any restrictions.[27] In his Declaration Caplan states:

> At the time I was released to return back to work, my health had improved a lot based on the treatment I had received over the past several months, and I did not have any restrictions in order to do my job. I could perform my job duties without the need for any accommodations,

---

[26]FEI's MSJ, Docket Entry No. 31, pp. 20-21 (citing Caplan Deposition, p. 73:1-24, Docket Entry No. 31-1, p. 20).

[27]Plaintiff's Response, Docket Entry No. 34, pp. 3 and 9 (citing Declaration of Daniel Caplan ("Caplan Declaration"), Exhibit 1 to Plaintiff's Response, Docket Entry No. 34-1, p. 1 ¶¶ 5-6; and Caplan Return to Work Form, Exhibit 8, Docket Entry No. 34-8).

> and I did not anticipate having any unexpected absences. I know this because of my years of experience/work in the Quality Department of Fluor.[28]

Citing his work record and the Taylor Deposition, Caplan argues that there is no dispute that he met the minimum qualifications for the job he held, and that FEI had no problems with his performance other than his absences.[29]

Citing Hacienda Records, L.P. v. Ramos, 718 F. App'x 223, 235 (5th Cir. 2018) (per curiam), FEI argues that the court should disregard and strike Caplan's Declaration testimony because it "contradicts his prior sworn deposition testimony concerning whether his colitis prevented him from demonstrating regular, predictable attendance, without explanation."[30] In Hacienda Records, 718 F. App'x at 235, the court applied the sham affidavit rule articulated in S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996), to hold that the plaintiff could not raise a fact issue in the face of summary judgment simply by submitting an affidavit that contradicts prior sworn testimony. See also Cleveland v. Policy Management Systems Corp., 119 S. Ct. 1597, 1603 (1999) (recognizing that [f]ederal courts "have held with virtual

---

[28]Caplan Declaration, Exhibit 1 to Plaintiff's Response, Docket Entry No. 34-1, p. 1 ¶ 6.

[29]Plaintiff's Response, Docket Entry No. 34, p. 9 (citing Taylor Deposition, pp. 121:9-14, and 129:13-16, Exhibit 3 to Plaintiff's Response, Docket Entry No. 34, pp. 19-20).

[30]FEI's Reply, Docket Entry No. 37, p. 7. See also FEI's Objections and Motion to Strike, Docket Entry No. 38, pp. 5-9, 13.

unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn testimony (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"). Asserting that "[t]he deposition questions were not focused on Caplan's health at the time he was returning to work,""[31] and that FEI's "attorney did not ask Caplan questions surrounding his release to return to work without restrictions, which is actually consistent with his declaration,"[32] Caplan argues "the fact that [he] did actually return to work on August 1, 2016, in compliance with his doctor's release, confirms that he was able to do his job at that time."[33]

Caplan's deposition testimony about the symptoms he experiences when his colitis flares up does not contradict the evidence provided either by his doctor's release or by his declaration because his deposition testimony does not address the efficacy of the treatment he received while on leave or the frequency with which he experiences colitis flare-ups. FEI's cite

[31]Plaintiff's Response to Defendant's Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike ("Plaintiff's Response to Objections and Motion to Strike"), Docket Entry No. 39, p. 2, n.2.

[32]Id.

[33]Id. at 2.

to Caplan's poor attendance history before taking FMLA and short-term disability leave does not support FEI's contention that Caplan was not a qualified individual with a disability because FEI acknowledges that "even before Caplan was diagnosed with colitis, or went on short-term disability, he was not regularly attending work and for a variety of reasons which were non-health related."[34] Because Caplan declares that when he was released to return to work his health had improved based on the treatment he had received while on leave,[35] because the release to return to work on August 1, 2016, that Caplan received from his doctor does not cite any restrictions,[36] and because Caplan's deposition testimony regarding the symptoms he experiences when his colitis flares up does not address either the efficacy of the treatment Caplan received while on leave or the frequency with which Caplan experiences flare-ups, the court concludes that Caplan has presented evidence capable of proving that he is a qualified individual, i.e., a disabled individual capable of performing the essential functions of his position without a reasonable accommodation. Accordingly, FEI's objection to ¶ 6 of Caplan's Declaration will be overruled, and FEI's motion to strike ¶ 6 of Caplan's Declaration will be denied.

---

[34]FEI's MSJ, Docket Entry No. 31, p. 20 (citing emails from Caplan stating his inability to come to work for various reasons, Exhibits G and I to FEI's MSJ, Docket Entry Nos. 31-7 and 31-9).

[35]Caplan Declaration, Exhibit 1 to Plaintiff's Response, Docket Entry No. 34-1, p. 1 ¶ 6.

[36]Release to Work Form, Exhibit 8 to Plaintiff's Response, Docket Entry No. 34-8.

### (3) Caplan's Disability Factored into FEI's Decision to Discharge Him

FEI argues that Caplan cannot establish a prima facie case of ADA discrimination because he cannot establish that his colitis was a factor in the layoff decision.[37] Citing Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 163 (5th Cir.), cert. denied, 117 S. Ct. 586 (1996), FEI argues that Caplan must demonstrate "that the employer knew of [his] substantial physical or mental limitation."[38] Citing Caplan's deposition testimony that he never told any manager at FEI, including Taylor, that he had colitis, and that he never requested any accommodation from FEI and he never discussed his medical treatment or condition with Taylor after he was diagnosed with colitis, FEI argues that

> [b]ecause there is no evidence in this case that Taylor was aware of Caplan's colitis, or any physical condition that he alleges was disabling, Caplan's colitis could not possibly have played a role in Taylor's decision to terminate his employment. Nor does Caplan have competent summary judgment evidence indicating that Taylor perceived him as disabled while he was out on medical leave. Because there is no evidence that Taylor was aware of Caplan's claimed disability at the time he selected Caplan for layoff, FEI is entitled to judgment as a matter of law.[39]

Caplan responds by citing ¶ 4 of his declaration and emails that he sent to Taylor and Lindstrom keeping them informed about his on-going need for medical tests and treatment – including

---

[37]FEI's MSJ, Docket Entry No. 31, pp. 19-23. See also FEI's Reply, Docket Entry No. 37, pp. 5-10.

[38]FEI's MSJ, Docket Entry No. 31, p. 21.

[39]Id. at 22.

hospitalization – throughout the period that he was on FMLA and short-term disability leave,[40] and the release that he obtained from his doctor allowing him to return to work without restrictions on August 1, 2016.[41] Caplan also cites his own deposition testimony that he "was fired on the same day he returned from his medical leave, and Taylor specifically referenced [his] disability leave and being gone so long."[42] The emails that Caplan sent to Taylor and Lindstrom informed them of the symptoms that he was experiencing and his on-going need for short-term disability leave, and the work release that Caplan received from his doctor was without restriction. Regarding Taylor's explanation for why he was discharged, Caplan testified as follows:

> Q. As accurately as you recall, can you tell me about the conversation -- that is, who said what -- in the meeting on August 1, 2016, with yourself, Ms. Lindstrom, and Mr. Taylor?
>
> A. Yes. Ken simply said, "Since you were gone so long, we had to replace you on the job; and we no longer have a spot for you, and we have to let you go."

---

[40]Plaintiff's Response, Docket Entry No. 34, p. 9 (citing Exhibit 1, Caplan Declaration, Docket Entry No. 34-1, p. 1 ¶ 4 ("I kept Ken Taylor and human resources informed about my medical status and when I could anticipate returning to work. I sent Mr. Taylor several emails between April and July 2016 about my status."), and Exhibit 12, emails from Caplan to Taylor and Lindstrom, Docket Entry No. 34-12, pp. 1-13).

[41]Release to Work Form, Exhibit 8 to Plaintiff's Response, Docket Entry No. 34-8.

[42]Plaintiff's Response, Docket Entry No. 34, p. 9 (citing Exhibit 2, Caplan Deposition, pp. 101:9-102:18, 104:17-22, Docket Entry No. 34-2, p. 4).

Q. And do you recall it in exactly those words, or do you recall anything different?

A. No, that was about dead on.

Q. Since you were gone so long, the company had to replace you?

A. Uh-huh.

Q. Yes?

A. Correct.

Q. And so to the best of your recollection as you sit here today, as accurately as you can repeat it, those are the words he used: Because you have been gone so long, we had to replace you?

A. Yes, sir.

Q. Did he use the word "layoff"? He told you you were being laid off.

A. He told me I was being laid off, but his main words: Since you were gone so long, we had to replace you on the job.

Q. What, if anything, did you say in response?

A. I said, "This is completely unfair. I was gone on disability. From what I understood, you have to hold my position and you can't replace me on this project."

Q. What, if anything, did he and/or Ms. Lindstrom say in response?

A. He responded that, because I was gone so long, they had to replace me; and you're being laid off. Because you're not on disability anymore, we can lay you off.[43]

[43]Caplan Deposition, pp. 101:9-102:18, Exhibit 2 to Plaintiff's Response, Docket Entry No. 34-2, p. 4.

Moreover, in a letter that FEI sent to the Equal Employment Opportunity Commission ("E.E.O.C.") regarding Caplan's complaint, FEI stated "Charging Party exhausted his 12 weeks of FMLA leave on June 17, 2016, but remained on leave of absence subsequent to that as an ADA accommodation."[44] The summary judgment evidence is capable of establishing that Taylor and Lindstrom, the people who discharged Caplan the day he returned from short-term disability leave, knew that Caplan suffered from a physical condition considered to be disabling, and that knowledge of Caplan's condition factored into their decision to discharge him.

(b) FEI Has Articulated a Legitimate, Non-Discriminatory Reason for Caplan's Discharge

FEI argues that it is entitled to summary judgment on Caplan's claim for disability discrimination arising from Caplan's discharge because Caplan was discharged for a legitimate, non-discriminatory reason, i.e., he was discharged in a reduction-in-force necessitated by lack of work.[45] Reduction-in-force is a legitimate, non-discriminatory reason for discharging an employee. See E.E.O.C. v. Texas Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996) (recognizing that a reduction-in-force "is itself a legitimate, nondiscriminatory reason for discharge").

---

[44]Exhibit 7 to Plaintiff's Response, Docket Entry No. 34-7, p. 4.

[45]FEI's MSJ, Docket Entry No. 31, pp. 22-26.

(c) Caplan Raises a Fact Issue as to Pretext

Under the McDonnell Douglas burden-shifting framework, once FEI has produced evidence of a legitimate, nondiscriminatory reason for the adverse employment action, Caplan must introduce evidence that would enable a reasonable jury to find

> either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative).

Rachid, 376 F.3d at 312 (internal quotation and alteration marks omitted). Caplan "may show pretext either through evidence of disparate treatment or by showing that [FEI's] proffered explanation is false or unworthy of credence." Caldwell, 850 F.3d at 242 (quoting Jackson, 602 F.3d at 378-79).

Citing Texas Instruments, 100 F.3d at 1181, FEI argues that in the context of a reduction-in-force, the fact that an employee is qualified for his job is less relevant because some employee may have to be let go despite competent performance; "the issue is whether Caplan can present evidence that he was selected for layoff because of his disability or the exercise of his FMLA rights, while similarly situated employees were retained."[46] Asserting that "[i]ndividuals in different positions with different responsibilities or qualifications, even if they are superficially

[46] Id. at 24.

comparable, are not similarly situated,"[47] FEI argues that "undisputed evidence . . . shows that Caplan was the only Associate Quality Specialist III employed by FEI at the time of his termination; thus, Caplan cannot point to any other employee with his same job title and pay classification that was treated differently."[48]

Caplan does not attempt to show pretext by disparate treatment but, instead, argues that FEI's stated reason for his discharge is false or unworthy of credence because there was work available and because there are "material inconsistencies and shifting explanations as to when the decision was made to terminate [him] and who were comparable employees."[49] Caplan argues that although the stated reason for discharging him was that there was no work available, his own deposition and declaration testimony as well as the declaration testimony of Kenny Persad are evidence that FEI had plenty of work available when he returned on August 1, 2016.[50] In pertinent part Caplan testified:

> I did return back to work in the early morning of Monday, August 1, 2016. I began getting my files back and getting up-to-speed on my work. I worked a full day that day, about seven hours. Based on my work that day, I

---

[47]Id.

[48]Id. at 25-26 (citing Taylor Declaration, Exhibit AA to FEI's MSJ, Docket Entry No. 31-27, pp. 4-7 ¶¶ 14-23).

[49]Plaintiff's Response, Docket Entry No. 34, p. 10.

[50]Id.

> could tell there was plenty of work available and that I would be busy.[51]

Caplan also testified that when he returned to work on August 1, 2016, he started to get his work back.[52] In pertinent part Persad testified that he worked closely with Caplan, they often performed similar job duties, and their specific job titles did not matter.[53] Persad also testified:

> I was surprised when I found out that Daniel was fired. Based on my employment and work at [FEI], I was aware that there was plenty of work available in the Quality Department when Daniel came back to work in mid-2016, and he could have worked on a project.[54]

FEI objects to and moves to strike this evidence that Caplan cites in support of his contention that FEI had work available when it discharged him because the testimony in both Caplan's and Persad's declarations is conclusory, not based on personal knowledge, and contains hearsay.[55] Neither Caplan nor Persad provide any testimony capable of establishing that their job duties or positions provided them knowledge or expertise to assess FEI's

---

[51]Caplan Declaration, Exhibit 1 to Plaintiff's Response, Docket Entry No. 34-1, p. 1 ¶ 7.

[52]Caplan Deposition, p. 217:4-5, Exhibit 2 to Plaintiff's Response, Docket Entry No. 34-2, p. 6.

[53]Declaration of Kenny Persad ("Persad Declaration"), Exhibit 13 to Plaintiff's Response, Docket Entry No. 34-13, p. 1 ¶¶ 4-5.

[54]Id. ¶ 6.

[55]FEI's Reply, Docket Entry No. 37, p. 7. See also FEI's Objections and Motion to Strike, Docket Entry No. 38, pp. 9-14.

staffing requirements. Accordingly, the court concludes that Caplan's and Persad's conclusory statements regarding their perceptions of the availability of work at FEI in August of 2016 are not sufficient to raise genuine issues of material fact for trial as to whether FEI's stated reason for Caplan's discharge was pretextual, and that FEI's objection to ¶ 7 of Caplan's Declaration and ¶¶ 4-5 of Persad's Declaration should be sustained and FEI's motion to strike these paragraphs should be granted. See Cavada v. McHugh, 589 F. App'x 717, 720 (5th Cir. 2014) (per curiam) ("a litigant cannot survive summary judgment on the strength of conclusory averments alone") (citing Little, 37 F.3d at 1075).

Caplan argues that FEI's reasons for discharging him are inconsistent and shifting because

> when comparing [FEI's] EEOC position statement to its interrogatory answer and to Taylor's deposition testimony, there are material inconsistencies and shifting explanations as to when the decision was made to terminate Caplan and who were comparable employees.
>
> Accordingly, there is sufficient evidence to show that [FEI]'s articulated reason for terminating Caplan is false, and a jury should be permitted to evaluate the evidence. Therefore, [FEI]'s motion with respect to the disability discrimination claim must be denied.[56]

Caplan also argues:

> In its interrogatory answers, [FEI] states that the decision to terminate Caplan was made on August 1, 2016, as a reduction in force. *Ex. #11, Interrogatory No. 2.* But in its EEOC position statement, [FEI] stated that the decision to terminate Caplan was made in July 2016.

---

[56]Plaintiff's Response, Docket Entry No. 34, pp. 10-11.

> *Ex. #7, p. 4.* Taylor testified that he made the decision to terminated Caplan "immediately following the receipt" of Caplan's email "regarding his imminent return to work." *Ex. #3 (Taylor Dep.), 58:2-13.* The email was sent on July 28, 2016. *Ex. #9.* But then Taylor also testified that [FEI's] statement to the EEOC about Caplan being selected for layoff in July 2016 is not correct. *Ex. #3, 109:10-15.* These explanations are inconsistent and shifting, and also confirms that [FEI] submitted false information to the EEOC.
>
> [FEI] indicated, in its EEOC position statement that it apparently selected Henry Howski over Caplan. *Ex. #7, p. 4.* However, Taylor testified that Howski was not retained over Caplan, was not compared to Caplan, and that [FEI's] statement to the EEOC was incorrect. *Ex. #3, 107:14 - 108:8.* He even testified it "was never a consideration" as to whether to retain Howski over Caplan. *Ex. #3, 103:8-12.* These explanations are inconsistent and shifting, and further confirms that [FEI] submitted false information to the EEOC.[57]

Caplan argues that Taylor's conflicting statements regarding when he decided to discharge Caplan, i.e., July or August, and the conflicting statements that FEI made to the EEOC, i.e., that FEI compared Caplan to Howski – the person who filled Caplan's position as SQS Coordinator on the SASOL project – when making the discharge decision, and that Taylor made during his deposition, i.e., that Caplan was not compared to Howski but, instead, to Jorge Flores, an employee who despite having the same job title and pay grade as Caplan had different job duties, i.e., Flores worked as a shop inspector while Caplan worked as a SQS Coordinator,[58] is evidence

---

[57] Id. at 4.

[58] See Taylor Deposition, pp. 58:2-63:15, 107:14-109:15, 130:17-132:19, Exhibit B to FEI's MSJ, pp. 18-19, 30, 36. See also Oral Deposition of Melanie Lindstrom ("Lindstrom Deposition"), (continued...)

from which a rationale fact-finder could conclude that FEI's stated reason for his discharge is false, unworthy of credence, and a pretext for intentional discrimination.[59]

The Fifth Circuit has recognized a legal basis for inferring pretext from inconsistent explanations. See Caldwell, 850 F.3d at 242 (citing Gee v. Principi, 289 F.3d 342, 347-48 (5th Cir. 2002, and Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 n.11 (5th Cir. 2007)). In Caldwell the Fifth Circuit observed that the defendant's reasons for having selected the plaintiff for discharge as part of a reduction-in-force had transformed over time. First, in letters to Caldwell's counsel and in response to interrogatories, the defendant stated that Caldwell was lazy and shirked his responsibilities by refusing to do a certain type of work. Id. at 243. Then in a letter to the E.E.O.C. the defendant stated that Caldwell was a "slacker" who simply didn't take the initiative to undertake optional tasks. Id. Then, before the district court the defendant argued that Caldwell was unwilling and/or unable to adapt to technological changes. Id. Finally, Caldwell's immediate supervisor who was responsible for the ultimate decision to discharge him, testified before the district court that the discharge decision had "absolutely nothing at all to do with Caldwell's work ethic." Id. The Fifth Circuit

[58](...continued) pp. 59-60, Exhibit 4 to Plaintiff's Response, Docket Entry No. 34-4, pp. 4-5.

[59]Plaintiff's Response, Docket Entry No. 34, pp. 4-5 and 10-11.

held that these differing statements evinced inconsistency in the defendant's explanations for discharging Caldwell and were thus probative of their truth. Id. & n.5.

In Burrell an employer at different times offered different explanations for its decision to promote an employee over the plaintiff. 482 F.3d at 413. Before the EEOC, the employer stated that the plaintiff lacked "purchasing experience." Id. But before the district court, the employer stated that the plaintiff lacked "bottling experience." Id. And before the Fifth Circuit the employer stated that the plaintiff lacked "purchasing experience in the bottling industry." Id. Although the employer tried to reconcile the inconsistency between the explanations for not promoting the plaintiff offered to the E.E.O.C. ("purchasing experience") and to the Fifth Circuit ("purchasing experience in the bottling industry") by describing the second statement as a clarification of the type of purchasing experience that the employer felt was important, the Fifth Circuit held that the inconsistency in combination with evidence suggesting the plaintiff was better qualified than the employee ultimately promoted created a genuine issue of material fact regarding whether the employer's hiring decision was based on the nondiscriminatory reason advanced by the employer. Id. So, too, in Gee, 289 F.3d at 342, the Fifth Circuit held that because the conflicting testimony went to the core of the employer's hiring decision, a reasonable fact-finder could conclude that the defendants' asserted justifications were

"unworthy of credence" and therefore a pretext for intentional discrimination.

Although FEI used the same reason each time it gave an explanation for Caplan's discharge, i.e., Caplan was discharged in a reduction-in-force necessitated by a reduction in FEI's workload, the issue is whether Caplan has cited evidence capable of establishing that FEI decided to discharge him instead of Howski, Flores, or someone else because of his disability. The discrepancy in timing about which Caplan complains, i.e., whether Taylor made the decision to discharge him on July 28th when Caplan sent the email stating that he could return to work on August 1st, or on August 1st when he returned to work, is not the kind of blatant inconsistency that characterized Caldwell, Burrell, and Gee. But the inconsistency as to rationale for FEI's decision to select Caplan for discharge instead of Howski, Flores, or someone else, is an inconsistency from which a reasonable fact-finder could conclude that FEI's stated reason for discharging Caplan is false, unworthy of credence, and a pretext for disability discrimination.

In its letter to the E.E.O.C., FEI stated that when Caplan

> notified the Quality department that he would be released to return to work on August 1, 2016, the Quality Department evaluated whether or not there was a project to which [Caplan] could be assigned. A project could not be located, and therefore, consistent with its established procedure regarding surplus personnel, [FEI] made staffing decisions based on employee rankings and experience to identify surplus personnel and opted to retain Mr. Howski over [Caplan]. Specifically, Mr. Howski was consistently rated higher than [Caplan] in the department rankings. All Quality personnel were rated on the same set of performance factors and skills

> as part of the ranking process, and Mr. Howski repeatedly received a higher overall rating than [Caplan]. Mr. Howski also had more relative experience than [Caplan]: Mr. Howski had over 40 years of Quality experience, whereas [Caplan] had only ten years of Quality related experience. Mr. Howski had significant field experience too, having worked at various sites domestically and internationally, while [Caplan]'s experience in the field was limited. Additionally, since [Caplan] was the lowest ranked employee in his job group, he was unable to bump any other employee from their assigned project. Thus, in July 2016, [Caplan] was selected for layoff. H.R. and the department manager met with [Caplan] on August 1, 2016[,] and informed him that he had been selected for layoff due to lack of available work.[60]

Taylor, the manager of the Quality Department, gave testimony during his deposition that conflicts with these statements that FEI made to the E.E.O.C. For example, FEI told the E.E.O.C. that it opted to retain Howski over Caplan because Howski was consistently rated higher than Caplan and had more relevant experience than Caplan. But Taylor testified that FEI did not correctly state how the decision to discharge Caplan was made, he never compared Howski to Caplan, he did not know if anybody else ever compared Howski's rankings to Caplan's rankings, and he did not know if Howski would have been rated higher than Caplan.[61] FEI told the E.E.O.C. that all Quality personnel were rated on the same set of performance factors and skills as part of the ranking process, and that since Caplan was the lowest ranked employee in his job group, he was unable to bump any other employee from their assigned project, and

[60]Exhibit 7 to Plaintiff's Response, Docket Entry No. 34-7, p. 4.

[61]Taylor Deposition, pp. 103:8-12, 107:14-108:22, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, pp. 29-30.

thus was selected for layoff. But Taylor testified that FEI's reference to job group in its letter to the E.E.O.C. referred to job title,[62] that FEI's work process was to compare people with the same job title regardless of whether they had the same job duties,[63] and that because Caplan had the same job title, i.e., Associate Quality Specialist III, as Jorge Flores,[64] who worked as a shop inspector, Flores was the employee with whom Taylor compared Caplan for layoff.[65] Taylor's testimony that Caplan and Flores had the same job title conflicts with the assertion in FEI's MSJ that "undisputed evidence . . . shows that Caplan was the only Associate Quality Specialist III employed by FEI at the time of his termination; thus, Caplan cannot point to any other employee with his same job title and pay classification that was treated differently."[66]

The inconsistent and conflicting evidence that FEI has advanced for how and why Caplan was compared to other employees and ultimately selected for layoff is evidence from which a reasonable

[62]Id. at 109:7-9, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, p. 30.

[63]Id. at 82:2-22, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, p. 24.

[64]Id. at 61:10-63:10, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, pp. 18-19.

[65]Id. at 130:17-131:18, Exhibit B to FEI's MSJ, Docket Entry No. 31-2, p. 36.

[66]FEI's MSJ, Docket Entry No. 31, pp. 25-26 (citing Taylor Declaration, Exhibit AA to FEI's MSJ, Docket Entry No. 31-27, pp. 4-7 ¶¶ 14-23).

fact-finder could find that FEI's stated reasons for his discharge are false or not worthy of credence and, instead, are pretexts for disability discrimination. Moreover, this case is not one of the rare instances where the plaintiff has only presented "a weak issue of fact as to whether the employer's reason was untrue." Reeves, 120 S. Ct. at 2109. Nor is it one in which there is "abundant and uncontroverted independent evidence that no discrimination had occurred." Id. at 2109. Accordingly, the court concludes that FEI is not entitled to summary judgment on Caplan's ADA discrimination claim.

**B. FEI is Not Entitled to Summary Judgment on Caplan's FMLA and ADA Claims for Retaliatory Discharge**

Caplan has asserted FMLA and ADA claims for retaliatory discharge. FEI argues that it is entitled to summary judgment on plaintiff's FMLA and ADA retaliatory discharge claims because FEI had a valid non-retaliatory reason for terminating Caplan's employment, i.e., reduction-in-force.

1. Applicable Law

The FMLA allows eligible employees working for covered employers to take temporary leave for medical reasons without risk of losing their employment. See 29 U.S.C. § 2601(b).[67] It also

[67]The FMLA applies to private-sector employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). An employee who has worked for a covered employer for at least 1250 hours during the preceding twelve months is eligible for FMLA leave. 29 U.S.C. § 2611(2)(A). FEI does not dispute either that it is a covered employer or that Caplan was eligible for FMLA leave.

contains a provision protecting employees from retaliation or discrimination for exercising FMLA rights. Mauder v. Metropolitan Transit Authority of Harris County, Texas, 446 F.3d 574, 580 (5th Cir.) cert. denied, 127 S. Ct. 230 (2006). "The Fifth Circuit applies the McDonnell Douglas framework to analyze retaliation claims under [both] the FMLA [and the ADA], noting that 'there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws.'" Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 768 (5th Cir. 2001). Therefore, in order to establish a prima facie case of retaliation under either the FMLA or the ADA Caplan must show that: (1) he engaged in activity protected by the FMLA and/or the ADA; (2) he suffered an adverse employment action; and (3) the adverse decision was made in retaliation for having engaged in activity protected by the FMLA and/or the ADA. Id. Once Caplan establishes a prima facie case the burden shifts to FEI to articulate a legitimate non-retaliatory reason for its employment action. Id. Thereafter, the burden shifts back to Caplan to "'adduce evidence that would permit a reasonable trier o[f] fact to find that the proffered reason is a pretext for retaliation.'" Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001). This requires Caplan to demonstrate that the adverse employment action would not have occurred "but for" his protected activity. Id. See also Jenkins v. Cleco Power, LLC, 487 F.3d 309, 316-17 (5th Cir. 2007) (ADA); Garcia v. Penske Logistics, L.L.C., 631 F. App'x 204, 210 (5th Cir. 2015) (per curiam) (FMLA).

### 2. Application of the Law to the Undisputed Facts

The evidence in this case easily satisfies the elements of a prima facie case for both Caplan's FMLA and his ADA retaliation claims. Caplan was protected under both the FMLA and the ADA because he took leave for a serious illness – colitis, and when his FMLA leave expired he continued on short-term disability leave, which FEI told the E.E.O.C. it extended to Caplan as an ADA accommodation.[68] Caplan suffered an adverse employment action when FEI discharged him the day he returned from short-term disability leave. At issue is whether Caplan has cited evidence capable of establishing that FEI made the adverse employment decision to discharge him in retaliation for Caplan's having exercised rights to leave under either the FMLA or the ADA. This causal link element of a prima facie case is satisfied here by the fact that FEI discharged Caplan the day he returned to work from disability leave, which was less than two months after the expiration of his FMLA leave. FEI argues that Caplan was discharged in a reduction-in-force necessitated by a decline in workload, which is a legitimate, non-discriminatory reason. Because the pretext arguments addressed in § III.A.2(c), above, with respect to Caplan's ADA discrimination claim apply equally to Caplan's claims for retaliation under the FMLA and the ADA, FEI's motion for summary judgment on these claims will be denied. See Caldwell, 850

---

[68]Exhibit 7 to Plaintiff's Response, Docket Entry No. 34-7, p. 4.

F.3d at 246 (citing Miller v. Metrocare Services, 809 F.3d 827, 832 (5th Cir.), cert. denied, 136 S. Ct. 2463 (2016)).

### IV. Caplan's Motion for Partial Summary Judgment

Asserting that FEI failed to provide details regarding the factual bases for its assertion of affirmative defenses, Caplan moves for partial summary judgment on two affirmative defenses:

- "Plaintiff's claims are barred, or [his] recovery should be offset, by the after-acquired evidence doctrine, if applicable." *Docket #5, p. 15, ¶13.*

- "Plaintiff has suffered no damages; alternative, Plaintiff has failed to mitigate his damages, if any." *Docket #5, p. 16, ¶23.*[69]

In response FEI withdraws the affirmative defense based on after-acquired evidence,[70] and argues that

> FEI should be permitted to try its affirmative defense of failure to mitigate damages to the jury because: (1) Caplan's conclusory Motion is insufficient to shift the burden to FEI, and, even if it were sufficient, (2) there is a genuine issue of material fact as to whether substantially equivalent work was available to Caplan and whether Caplan exercised reasonable diligence to obtain it. There have been numerous job postings since Caplan's termination from FEI on August 1, 2016 for quality control positions that were substantially equivalent to Caplan's position as an Associate Quality Specialist III for FEI. But the record evidence supports the conclusion that Caplan did not exercise reasonable diligence in applying for or otherwise seeking out these positions. Indeed, Caplan simply failed to apply for *any* jobs for several months after FEI laid him off, including for the past three months immediately preceding the

---

[69]Caplan's MPSJ, Docket Entry No. 28, p. 1.

[70]FEI's Opposition to Caplan's MPSJ, Docket Entry No. 35, p. 8.

filing of this Response. Accordingly, Caplan's Motion should be denied.[71]

**A. Applicable Law**

To recover damages in an employment discrimination case, a plaintiff must mitigate his damages by searching for substantially equivalent employment. West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003). "Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the . . . claimant has been discriminatorily terminated." Id. Courts in the Fifth Circuit are split over whether employers asserting this defense must prove both that substantially equivalent work was available and that the plaintiff failed to exercise reasonable diligence to obtain it. Compare id. ("Although the employer is normally required to prove that substantially equivalent work was available and that the former employee did not exercise reasonable diligence to obtain it, once the 'employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment.'") (quoting Sellers v. Delgado College, 902 F.2d 1189, 1193 (5th Cir. 1990), cert. denied, 111 S. Ct. 525 (1991), with Sparks v. Griffin, 460 F.2d 433, 443 (5th Cir. 1972) (defendant must prove both failure to exercise diligence and

[71] Id. at 9.

availability of substantially equivalent employment). Because neither West nor Sellers was an en banc decision, courts in this district have held that the Fifth Circuit's earlier holding in Sparks controls and that defendants must, therefore, prove both the availability of substantially equivalent employment and that the plaintiff failed to exercise reasonable diligence to obtain substantially equivalent employment. See Miles-Hickman v. David Powers Homes, Inc., 613 F. Supp. 2d 872, 887 & n.22 (S.D. Tex. 2009).

**B. Application of the Law to the Undisputed Facts**

Caplan argues that FEI "has failed to present any facts or evidence that suggest [he] did not mitigate his damages."[72] FEI responds that

> [r]egardless of which standard is applied, Caplan's Motion must be denied because the summary judgment evidence shows that there is a genuine issue of material fact as to: (1) whether substantially equivalent work was available to Caplan; and (2) whether Caplan exercised reasonable diligence to obtain it.[73]

1. FEI Raises a Fact Issue as to Availability of Substantially Equivalent Employment

Citing Caplan's deposition testimony as well as the Texas Workforce Commission's website, FEI argues that "[t]he summary judgment evidence shows that numerous quality control positions substantially equivalent to Caplan's position at FEI were available

---

[72]Caplan's MPSJ, Docket Entry No. 28, p. 3.

[73]FEI's Opposition to Caplan's MPSJ, Docket Entry No. 35, p. 18.

from the day FEI laid Caplan off until th[e] present."[74] FEI's reliance on Caplan's deposition testimony is not persuasive. In pertinent part Caplan testified that after leaving FEI he was told by the CEO of his former employer, B.I.E. International, that there were no jobs at B.I.E.'s United States offices, and that although B.I.E. had obtained a contract overseas it would not create job positions within his organization.[75] When asked if he knew whether B.I.E. had jobs available overseas, Caplan answered, "I don't know."[76] Nevertheless, FEI submitted copies of postings from August and October of 2017 for jobs that appear to have been equivalent to the position that Caplan held at FEI.[77] Accordingly, the court concludes that FEI has presented evidence capable of establishing the availability of substantially equivalent employment.

2. FEI Raises a Fact Issue as to Whether Caplan Has Made Reasonable Efforts to Obtain Work

Asserting the summary judgment evidence shows that Caplan's job search peaked in August of 2016 after he was laid off and in

---

[74] Id. at 19.

[75] Caplan Deposition, pp. 24:7-25:11, Exhibit A to FEI's MSJ, Docket Entry No. 31-1, pp. 7-8.

[76] Id. at 25:12-16.

[77] FEI's Opposition to Caplan's MPSJ, Docket Entry No. 35, p. 19 (citing Exhibit Q, Docket Entry No. 35-17, pp. Caplan v. Fluor 224 ("Quality Assurance Tech, Intermountain Staffing, Houston, TX, $18-$25 hourly (USD)), and Caplan v. Fluor 379 ("QA/QC Manager - Fabrication, Coens Energy Solutions, Houston, TX, $75,000-$90,000 annual (USD)).

July of 2017 when he filed this lawsuit, but tapered off to the point of non-existence in subsequent months, FEI argues that a genuine issue of material fact exists as to whether Caplan exercised reasonable diligence in attempting to obtain substantially equivalent employment.[78] As evidence that Caplan failed to make reasonable efforts to obtain substantially equivalent employment, FEI argues that Caplan failed to apply for the apparently equivalent positions posted by Intermountain Staffing and by Coens Energy Solutions in August and October of 2017.[79] Asserting that he has applied for numerous jobs, Caplan argues that there can be no factual dispute that he exercised reasonable diligence.[80] Because both parties have cited conflicting evidence as to whether Caplan failed to make reasonable efforts to obtain substantially equivalent employment, a genuine issue of material fact exists as to this issue.

Because the court has concluded that genuine issues of material fact exist as to the availability of substantially equivalent employment, and as to whether Caplan failed to make reasonable efforts to obtain substantially equivalent employment, Caplan's motion for partial summary judgment on FEI's affirmative defense that he failed to mitigate his damages will be denied.

---

[78]FEI's Opposition to Caplan's MPSJ, Docket Entry No. 35, p. 20.

[79]Id.

[80]Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment, Docket Entry No. 42, pp. 1-2.

## V. FEI's Objections and Motion to Strike

FEI objects to and moves to strike Caplan's Declaration submitted in support of his response to FEI's MSJ (Docket Entry No. 34-1) arguing that the declaration contradicts Caplan's sworn deposition testimony without explanation, and contains conclusory statements for which Caplan lacks personal knowledge.[81] For the reasons stated in § III.A.2(a)(2), above, the court has already concluded that FEI's objection to ¶ 6 of Caplan's Declaration should be overruled and that FEI's motion to strike ¶ 6 of Caplan's Declaration should be denied because that paragraph does not contradict without explanation Caplan's sworn deposition testimony. But for the reasons stated in § III.A.2(c), above, the court has already concluded that FEI's objections to ¶ 7 of Caplan's Declaration should be sustained, and that FEI's motion to strike ¶ 7 of Caplan's Declaration should be granted because Caplan fails to present any evidence capable of establishing that his job duties or position provided him knowledge or expertise to assess FEI's staffing requirements. Because the court has been able to resolve FEI's MSJ without reference to the remaining paragraphs of Caplan's Declaration, FEI's motion to strike will be denied as moot as to all other paragraphs of Caplan's Declaration.

FEI objects to and moves to strike Persad's Declaration submitted in support of Caplan's response to FEI's MSJ (Docket Entry No. 34-13) arguing that the declaration contains conclusory

---

[81]FEI's Objections and Motion to Strike, Docket Entry No. 38, p. 9.

and unsupported assertions or subjective or self-serving interpretations, and the declaration contains inadmissible hearsay.[82] For the reasons stated in § III.A.2(c), above, the court has already concluded that FEI's objections to ¶¶ 4-5 of Persad's Declaration should be sustained and FEI's motion to strike those paragraphs should be granted because Caplan fails to present any evidence capable of establishing that Persad's job duties or position provided him knowledge or expertise to assess FEI's staffing requirements. Because the court has been able to resolve FEI's MSJ without reference to the remaining paragraphs of Persad's Declaration, FEI's motion to strike will be denied as moot as to all other paragraphs of Persad's Declaration.

## VI. Conclusions and Order

For the reasons stated in § III, above, the court concludes that Caplan has raised genuine issues of material fact for trial on his claims for discriminatory discharge in violation of the ADA, and for retaliatory discharge in violation of the ADA and the FMLA. Accordingly, Defendant Fluor Enterprises, Inc.'s Motion for Summary Judgment (Docket Entry No. 31) is **DENIED**.

For the reasons stated in § IV, above, the court concludes that Caplan is not entitled to summary judgment on FEI's affirmative defense based on Caplan's alleged failure to mitigate his damages. Accordingly, Plaintiff's Motion for Partial Summary Judgment (Docket Entry No. 28) is **DENIED**.

---

[82] Id. at 11-12.

For the reasons stated in §§ III.A.2(a)(2) and IV, above, FEI's objection to ¶ 6 of Caplan's Declaration is **OVERRULED**; and for the reasons stated in § III.A.2(c) and IV, above, FEI's objection to ¶ 7 of Caplan's Declaration is **SUSTAINED**. FEI's Motion to Strike is **GRANTED** as to ¶ 6 of Caplan's Declaration, **DENIED** as to ¶ 7 of Caplan's Declaration, and **DENIED AS MOOT** as to all remaining paragraphs of Caplan's Declaration. For the reasons stated in §§ III.A.2(a)(2) and IV, above, FEI's objection to ¶¶ 4-5 of Persad's Declaration is **SUSTAINED**, FEI's Motion to Strike is **GRANTED** as to ¶¶ 4-5 of Persad's Declaration, and is **DENIED AS MOOT** as to all remaining paragraphs of Persad's Declaration. Accordingly, Defendant Fluor Enterprises, Inc.'s Objections to Plaintiff's Summary Judgment Evidence and Motion to Strike, Docket Entry No. 38, is **GRANTED IN PART and DENIED IN PART**.

The court concludes that this case is appropriate for mediation or a settlement conference before a Magistrate Judge. If the parties are not able to settle this action within the next thirty (30) days, they will provide the court with the name and contact information of an agreed mediator, or a request that the court refer this case to Magistrate Judge Nancy K. Johnson for a settlement conference.

**SIGNED** at Houston, Texas, on this the 8th day of April, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE